```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------------x

3    STUDENTS FOR FAIR ADMISSIONS,

4                    Plaintiff,

5              v.                              23 CV 8262(PMH)

6                                             CONFERENCE

7    UNITED STATES MILITARY ACADEMY
     At WEST POINT; et al.,
8
                    Defendants.
9
     ------------------------------------x
10                                      United States Courthouse
                                        White Plains, N.Y.
11                                      October 24, 2023

12

13

14   Before:  THE HONORABLE PHILIP M. HALPERN, District Judge

15

16                         APPEARANCES

17   CONSOVOY, McCARTHY, PLLC
          Attorneys for Plaintiff
18   CAMERON THOMAS NORRIS
     THOMAS McCARTHY
19   PATRICK STRAWBRIDGE

20

21   DAMIAN WILLIAMS
          United States Attorney for the
22        Southern District of New York
     ALYSSA O'GALLAGHER
23   JENNIFER ELLEN BLAIN
          Assistant United States Attorneys

24

25   *Proceeding recorded via digital recording device.
```

1              THE DEPUTY CLERK:  In the matter of Students for Fair

2    Admissions v. United States Military Academy at West Point, et

3    al., docket number 23 CV 8262.

4              Can counsel please note your appearance for the

5    record, starting with the plaintiff.

6              MR. NORRIS:  Good morning.  This is Cam Norris,

7    counsel for the plaintiff, Students for Fair Admissions, and

8    with me on the line are my colleagues, Tom McCarthy and Patrick

9    Strawbridge.

10             THE DEPUTY CLERK:  And the defendants.

11             MS. O'GALLAGHER:  Good morning.  This is Alyssa

12   O'Gallagher from the U.S. Attorney's Office for the Southern

13   District of New York for the defendants.

14             MS. BLAIN:  As well as Ellen Blain from the Southern

15   District of New York.

16             THE COURT:  All right, counsel, good morning.

17             MS. BLAIN:  Good morning.

18             THE COURT:  Boy, do I have a million questions here

19   for all of you.  So let's start with some basic thoughts here.

20             First of all, the docket sheet reflects that there is

21   an affidavit of service of all these papers, document 21, and

22   when I pull it, it's plaintiff's counsel's one sentence,

23   "Defendants accepted service."  It's not an affidavit of

24   service.

25             So let me start with Ms. O'Gallagher or Blain.

1          Have you accepted service of these papers, the

2     complaint and the motion papers, on behalf of all defendants?

3          MS. O'GALLAGHER:  Yes, your Honor.  This is Alyssa

4     O'Gallagher.

5          As the docket number that you referenced mentioned,

6     in a conversation with plaintiff's counsel, the government

7     defendants did accept service.

8          THE COURT:  Okay.  So why don't we file either a

9     proper affidavit of service or an acceptance from the

10    defendants of service that's more in line with Federal Rule 4.

11    Okay?  You guys decide what you want to do, but this is

12    inadequate for an affidavit of service, so I would like that

13    cleaned up.  So that's one thing.

14         Another thing.  Mr. McCarthy, I guess, wrote me --

15    this is document 15 -- would I construe the notice of motion as

16    an order to show cause.  The answer to that is no.  You will

17    file an order to show cause when we get done for me to sign.

18    I'm not going to construe that notice of motion as an order to

19    show cause.  And that will become a little clearer in a minute.

20         So let's get those two things out of the way.

21         Now, what I have a concern about here -- I have a

22    number of concerns, but let me start this way.  Given where we

23    are, given the ruling by the Supreme Court of the United States

24    and given the very narrow issue here, I wonder whether this

25    case should not -- we shouldn't try and resolve these issues

1    before we fight over these issues.  And I want to hear -- and I

2    know plaintiffs are always willing to settle, but, Ms. Blain,

3    Ms. O'Gallagher, speak to me about this.

4              In other words, we know what the United States

5    Supreme Court has said.  I've read Footnote 4.  I've looked at

6    the briefing here.  Is this something that the Military Academy

7    at West Point and the Department of Defense and all of the

8    military needs to air in public or can we get to a resolution

9    here that solves the problem, not perfectly, but maybe in a

10   meaningful way such that we don't need to fight over that?

11             MS. O'GALLAGHER:  Your Honor, this is Alyssa

12   O'Gallagher.

13             At this juncture, the government defendants have not

14   considered possibly resolving this case in that way.  As your

15   Honor mentioned, in the Supreme Court case last term, the

16   UNC/Harvard case, Footnote 4 really does carve out the Military

17   Academies and the Supreme Court there noted that that was due

18   to the possibility that the Military Academies, West Point here

19   specifically and the Army generally, may have distinct

20   compelling interests.

21             THE COURT:  Potentially distinct interests, yes.

22   Potentially distinct interests.  And so if that's the case and

23   they need race as a factor, you know, we can litigate that

24   pretty -- in a straightforward way once we get a few things

25   lined up here.  But what I was thinking was do we really need

1    to get into all of that?

2              Maybe there's a way to consider a resolution of this

3    without putting on a full display of potentially distinct

4    interests or not.  I don't feel like this is the Hatfields and

5    the McCoys here.  I feel like this is a plaintiff organization

6    that has obtained a result in the United States Supreme Court,

7    and there's a question, does it apply to the Military.  And so

8    the Military can say, Judge, you know, that rule should not

9    apply to us because we have compelling governmental interests

10   and we're going to fight to the death on it and so be it.  Or

11   the government can say, well, we can enter into an order and

12   stipulation that reflects what our real needs are and if

13   it's -- I assume the plaintiff wouldn't agree to permit race to

14   be on the application process, but maybe there's some way of

15   doing it.

16             I will ask -- I'm going to direct, actually, that you

17   consider that with your clients and as we're progressing here,

18   you'll come back to me.  If we need to fight, I'm prepared to

19   do what I need to do at my end, but my question is, cooler

20   heads prevailing, do we really need to fight here.  And so,

21   please, you'll come back to me.  I don't know how much time --

22   we'll come back to how much time about settlement in a minute

23   because I want to talk about a number of other things here if

24   we can.

25             All right?  You understand where I'm coming from,

```
 1    Ms. Blain, Ms. O'Gallagher?

 2              MS. O'GALLAGHER:  Yes, your Honor.  We understand

 3    where your Honor's coming from.

 4              THE COURT:  All right.  Good.

 5              MS. O'GALLAGHER:  I can broach the conversation with

 6    our clients.

 7              THE COURT:  Terrific.

 8              And I assume, Mr. McCarthy, you have no problem

 9    whatsoever, should the defendants want to engage in a

10    discussion, in engaging in such a discussion with a mediator or

11    magistrate judge or whatever it is that we can be helpful with.

12              MR. NORRIS:  Your Honor, this is Mr. Norris.  I'll be

13    speaking with for the plaintiff.

14              THE COURT:  Oh.  Sorry.  Okay, Mr. Norris.

15              MR. NORRIS:  We totally agree.  We would be happy to

16    sit down with the government any time.

17              THE COURT:  Yes.  Of course you would.  All right.

18    Good.

19              Now, I want to talk, Mr. Norris, for a minute with

20    you about the premise here.  I've looked around.  I guess this

21    is your first preliminary injunction motion in this type of

22    case.  Am I right about that?

23              MR. NORRIS:  I think that's correct, your Honor.

24              THE COURT:  Yes.  I think so, too.  And so I want to

25    talk for a minute because we're going to need to do some things
```

1    here as a practical matter, as you'll see when we get into this

2    in a minute.

3        But the difficulty here, right, is you're asking me

4    to issue an injunction, right, based on the fact that there is

5    no compelling governmental interest that is furthered by a

6    racial classification. But just as a generic practical matter,

7    you know, you've given me -- I guess, in your brief, you've

8    referred to New York Times comments and maybe in a brief that

9    was written by Amicci in a case or two, but we actually --

10   until we hear from the defendant, we actually don't know what

11   the compelling governmental interests in this case are, right?

12       I mean, you're speculating, you're cataloging, you're

13   giving me in part hearsay comments, in large part hearsay

14   comments, but you're anticipating, if you will, the very

15   factual premise of your motion you're anticipating. You

16   haven't deposed the defendants. You haven't -- we don't even

17   have an answer to the complaint yet, which, by the way, we need

18   to talk about whether there's answer or motion practice here.

19   But the basic premise is -- the quintessential fact that I need

20   to know about is squarely within the knowledge of the defendant

21   and your premise, based on your application for preliminary

22   injunction relief, is based on your cataloging from other

23   sources what you believe to be the compelling governmental

24   interests, right?

25       MR. NORRIS: I think I agree in part, your Honor.

1           One problem with this case is that the government has

2     filed amicus briefs in all these affirmative action cases over

3     the years and never quite described what it was doing or why

4     even though, if it was using race as a factor, it always had

5     the burden under strict scrutiny to come forward with very

6     specific interests, very specific evidence.  So we are

7     anticipating a little bit.

8           But one problem with this case is we think we should

9     win as a matter of law no matter what interest the government

10    comes up with.  The Supreme Court left open the compelling

11    governmental interest part, potentially distinct interests, but

12    they still have to satisfy narrow tailoring.  And the reason we

13    sought a preliminary injunction here for the first time and

14    again in the parallel Naval Academy case that we filed a few

15    weeks later is that the law has really shifted and the

16    government we think should bear the burden of not being able to

17    use race while this case is pending because of all the narrow

18    tailoring reasoning in the Supreme Court's opinion about how

19    you can't use race as a negative, you can't stereotype, these

20    racial categories are arbitrary, you've got to consider

21    race-neutral alternatives, whereas, we know the Coast Guard

22    Academy didn't use race for years, so on and so on.

23          So we think there are several independent, narrow

24    tailoring issues that should make us win as a matter of law

25    regardless of their interests, but we do look forward to seeing

1    what potentially distinct interests they identify so we can

2    scrutinize whether they are compelling or not.

3         THE COURT:  Well, I read your brief.  I read your

4    brief.  Your argument is that neither is there narrowly

5    tailored or are there compelling governmental interests.  You

6    haven't limited yourself to the issue of narrowly tailored

7    interests.  So I hear you, I hear you, but it's a concern of

8    mine, frankly, that I need to hear from the government before I

9    can do anything on your motion for preliminary injunction.  So

10   the premise really is a little strained, if you will.  Now, I

11   understand your point as a matter of law, but, you know, in the

12   real world, I'm going to have to hear from the defendants and

13   I'm going to have to consider both of the strict scrutiny

14   elements, right, in order for me to get to a proper

15   adjudication of the issue you want me to adjudicate.  So I'm

16   raising the point to say I wonder whether this is the best

17   methodology to approach this with.

18        Also, you know, there's a few sort of niggly issues

19   that we need to talk about, frankly, Mr. Norris, that might

20   change your thinking a little bit.  My idea is to say why do we

21   need an injunction here that's ultimate relief when we need to

22   hear from the government, so shouldn't I put you on expedited

23   discovery and give you a trial date.  And I have a trial date

24   of April 1st in mind.  And we'll have a trial and we'll

25   adjudicate this at trial.  That's kind of where my head is

1    right now.

2            But let me go a little further to explain some of the

3    things that are bothersome to me besides this premise that

4    you're on, which is give me a preliminary injunction, but we

5    actually haven't heard from the government on the compelling

6    interests.  I understand a little better now your notion,

7    Mr. Norris, that you can win on the narrowly tailored issue as

8    a matter of law, but -- so let's just -- let me throw a couple

9    of things out here.

10            First of all, we're going to do a briefing schedule,

11    right?  I'm happy to engage November 17th for opposition and

12    November 29th for a reply, but at least your memo of law asks

13    me to issue an injunction by December 1st.  Now, I am good and

14    I am a diligent, hard-working district court judge, I can

15    assure you, but I don't think I'm that good.  And so I don't

16    think I can rule on this -- in fact, I'm not going to be able

17    to rule on this by December 1st.  But tell me, what is it about

18    December 1st that is magical here?

19            MR. NORRIS:  Your Honor, nothing particularly magical

20    about December 1st, which is why we were willing to give the

21    government really more time than we wanted to.  But we just had

22    the same conversation with the judge in the Naval Academy case

23    last week and that judge was considering, for the same reasons,

24    backing up the schedule to make it even faster, but the reason

25    he ultimately decided not to and why we ultimately decided

1    November 17th, November 29th is because we understand the

2    government is compiling its evidence right now.  It's going to

3    be prepared to file that on November 17th.

4          And the problem, your Honor, is that we currently --

5    so the government told us at the outset of this case that the

6    deadline for applications for this cycle is January 31st, 2024,

7    so that's the deadline we're working with.  We backed up from

8    January 31st to December 1st as a sense of how much time would

9    it take to get a decision.  And then the loser in this case

10   will almost certainly take two levels -- or one level of

11   appeal.  And so we were just trying to build in time in the

12   calendar for that.

13         But the reason we had to go with the preliminary

14   injunction this time is not only because the ground has shifted

15   legally, but we have a duty to our members, and two of our

16   members are currently high school seniors who are applying to

17   the Military Academy and if January 31st comes and goes and we

18   don't have a ruling, even a preliminary ruling, that the

19   government can't use race when making selections for West

20   Point, then those students are forever going to lose their

21   opportunity to compete on a fair basis.

22         THE COURT:  Can't they re-apply the next year?

23         MR. NORRIS:  Well, in the normal course, your Honor,

24   they may have to take a year off of school, which is

25   irreparable injury in our view.  They may have to go to a

```
1   different school.  They have to get their life affairs in

2   order.  They may be able to re-apply, that's correct, but we

3   still think it's irreparable harm to take a year off.

4           THE COURT:  Okay.  So if you're asking me for a

5   mandatory injunction, which you are, this is not a status quo

6   injunction, this is a mandatory injunction, and you're asking

7   me for ultimate relief.  You're asking me for ultimate relief

8   because when you look at your complaint and your requests for

9   relief in the wherefore clause, it's no different than the

10  request you're making for your preliminary injunction.  When

11  you're doing that here in this circuit, the standard is

12  different than the one you have set forth in your motion

13  papers.  The standard is that there is a heightened scrutiny

14  for that kind of relief and there is a requirement that there

15  be a substantial likelihood of succes, not that you're likely

16  to succeed or have sufficiently serious questions going to the

17  merits.  And I guess there's a myriad of cases, but the one I

18  have in front of me is called Eng, E-N-G, against Smith, 849

19  F.2d at 80, and it explains it in pretty good detail at 81 and

20  82.  It's a Second Circuit 1988 case.  So that's going to have

21  to be clarified for me in terms of your underlying motion

22  papers simply because that standard of review is not the

23  standard of review I need to consider.

24          Also, I have a concern, question, about -- I guess I

25  got some late filings -- in other words, the notice of
```

motion -- and those papers were filed all at once, and then we

got another filing from a Member C, which occurred on the 5th

of October, different than when everything else was filed.  I'm

curious why is that.  And I'm inferring that there was a Member

B.  What happened to Member B or -- the complaint refers to a

Member B.  So talk to me a little bit about those two

situations, if you don't mind.

        MR. NORRIS:  That's right, your Honor.  Our

members -- we sued with Members A and B.  They're mentioned in

the complaint.  I believe Member A is a high school senior.

Member B I believe we just say is in high school, not a senior.

And then Member C is our latest member to join the litigation,

and it's unfortunate that it was not filed with the original

motion, but our only thinking was we suspect, based on our

conversations with the government, that they're going to come

after our associational standing and the standing of these

individual members and so instead of introducing this evidence

in a reply brief in responding to a standing objection, we

thought we might as well give the government as much time with

it as possible.  They still have six weeks at the time to file

that, to see that and to be prepared.

        THE COURT:  Okay.  That, I guess, answers the

question.

        I don't know -- I haven't studied carefully the

Justice Roberts opinion here, but it seemed to -- I didn't

1    recognize what was left open on the standing issue of your

2    client's organization.  Happy to have an open mind about it,

3    but it appeared to me that Justice Roberts said got standing.

4                MR. NORRIS:  Couldn't agree more, your Honor, except

5    we have continued to see the same standing argument that was

6    rejected in that case raised against associational clients, so

7    we're just trying to dot our Is and cross our Ts on this one.

8                THE COURT:  I understand dotting your Is and crossing

9    your Ts.  I'm sort of the same kind of person.  But I'm a trial

10   judge, so we've got to get my trial record in order so that I

11   can do what I need to do here.

12               I guess, Ms. Blain or Ms. O'Gallagher, am I missing

13   something?  Is there something left open by the Supreme Court's

14   opinion on standing?

15               MS. O'GALLAGHER:  Your Honor, plaintiff's counsel is

16   correct that the government defendants are looking into

17   standing.  And I believe, from the government defendant's

18   perspective, one element of the associational standing test is

19   that an individual member of the organization has to have

20   standing, and so I think that that is really a fact-specific

21   question that's dependent on the facts with respect to any

22   individual member of the organization.

23               THE COURT:  Okay.

24               MS. O'GALLAGHER:  And I don't think that the Court's

25   opinion in the UNC/Harvard cases foreclose the possibility that

there could be individual members out there who, based on the

facts specific to them, may not have standing themselves to

then satisfy the overall associational standing test for the

organization.

          THE COURT:  Okay.  That's a clear statement.

          So I guess it's members A, B and C that you're

looking to attack, and Mr. Norris' addition of Member C he

believes should block that attack.  So look carefully at it,

will you?  I have plenty of work to do here.  If it's, you

know -- if you conclude standing exists, let's not waste time

on it.  Okay?

          MS. O'GALLAGHER:  Understood, your Honor, yes.

          THE COURT:  While I've interrupted Mr. Norris,

because I need to come back to him, is the government intending

to move to dismiss this complaint or to file an answer?  And if

so, when is the answer being filed?

          MS. O'GALLAGHER:  Your Honor, based on the government

defendants' acceptance of service, the government defendants'

answer would be due on November 24th.  The government

defendants and plaintiff's counsel have had a conversation

about staying the government's deadline to answer pending final

resolution of their preliminary injunction motion.  Assuming

that that's how the parties will proceed here, we're happy to

make a letter motion to that effect to allow the Court to

consider it, but --

1          THE COURT:  Why would I grant that?  Why would I

2     grant that?  I'm very interested in getting the merits of this

3     argument under my belt and an answer to this complaint would at

4     least let me know where you stand.  Tell me why I wouldn't do

5     that, why I wouldn't insist on an answer with your papers,

6     let's say, or the 24th.  I mean, what am I missing?

7          MS. O'GALLAGHER:  Your Honor, the government

8     defendants' position, and based on our agreement, I think

9     plaintiff's counsel may agree with this, an answer isn't

10    necessary to your Honor's resolution of any preliminary

11    injunction motion.  A preliminary injunction motion is, in

12    ways, like a summary judgment motion.  You know, the government

13    defendants will provide extensive factual bases for their

14    compelling interests and narrow tailoring arguments and the

15    Court will then consider the factual bases that the government

16    defendants put before it.  There's case law in this circuit

17    that an answer isn't necessary before a court, for example,

18    considers and decides a summary judgment motion.  I don't at

19    hand have similar case law in mind with respect to preliminary

20    injunction motions, but I --

21          THE COURT:  Let me interrupt to say, you know, Rule

22    56 says you don't have to have an answer to get a summary

23    judgment motion and that's the predicate for it.

24          Summary judgment motions and preliminary injunction

25    motions, you know, share similar thoughts in that you need

admissible evidence, you need a variety of things that are
similar, but -- you know, if you want to educate me on the
thought, I'm happy to be educated, but -- and I certainly don't
want to interrupt and interfere with a good relationship
between plaintiffs and defendants.  And if you've already
agreed to this, you know, educate me on why I shouldn't insist
on an answer.  If you left me alone, I would say, no, no, no,
not only do I -- I want to see an answer, but I'm happy to be
educated.  Again, all of this -- all of this, you know, sort of
leads me to thinking about this type of procedure being
followed, but okay.  You'll educate me on that within the next
week.  Okay?  Please.  So I understand it.  And you're right.
Maybe I'll be educated on something that I don't fully
understand.

            Okay.  How do we feel about admissible evidence here?
Newspaper articles, things that are without foundation.  I
mean, some of the West Point stuff I assume can be clarified in
the opposition papers that, yes, these are in fact business
records, but what about some of this other material,
Mr. Norris, that's hearsay?  Can I look at hearsay in
considering your motion?

            MR. NORRIS:  You can, your Honor.  This is a
preliminary injunction proceeding where the rules of evidence
don't apply.  Of course you can consider hearsay as going to
the weight of the evidence, but we don't think it's an

1    admissibility problem.  But we agree with your Honor where I

2    think your Honor is headed, which is the evidence of what West

3    Point is doing with respect to using race in admissions and why

4    it's doing it is evidence that's going to come from West Point,

5    which is the government, so --

6            THE COURT:  Right.

7            MR. NORRIS:  -- it would be reliable.

8            THE COURT:  Right.  Weight, not admissibility, is

9    exactly where my head is.  And again, because I think this is a

10   heightened standard, a heightened standard because it's

11   mandatory injunctive relief, you know, I would rather hear from

12   the government, period.

13           Now, let's talk for a minute about the case with the

14   other branch, the Navy.  Is that in this district, somewhere

15   else?  Where is it?

16           MR. NORRIS:  Your Honor, that's filed in the District

17   of Maryland.  It's in Baltimore, which is close to Annapolis.

18           THE COURT:  I see.  Okay.

19           And the reason we have two cases going is because the

20   Academies are in different places or --

21           MR. NORRIS:  Your Honor, I assume we could have filed

22   these in various different ways, but we sued the Academies

23   where they are at home and on behalf of our members who want to

24   apply there imminently.

25           And I just want to give you an update, your Honor.

1    The judge in the Navy case told us that he plans to schedule

2    the preliminary injunction hearing in mid-December.  He gave us

3    a couple of dates, but it's basically the second or third week

4    of December.

5         THE COURT:  Yeah.  My schedule is built out through

6    May and so I'm struggling to find time should I need a hearing.

7    I don't know that I will need a hearing.  But this is an

8    important issue, so I'm going to -- and it's a preliminary

9    injunction, so I have to pay it its do.  I just don't know when

10   that will be.

11        MR. NORRIS:  Your Honor, could I just add something

12   real quick?  The government can please correct me if I'm wrong,

13   but I think, so far, from our preliminary conversations,

14   neither side anticipates needing a hearing.  I think we may be

15   amenable to that, but I don't want to speak for the government.

16        THE COURT:  It may be that you are both amenable to

17   not having a hearing.  You know, I have to see what the

18   government says before I can tell you whether I need a hearing

19   or not.

20        MR. NORRIS:  Right.

21        THE COURT:  Also, there's this individual who filed a

22   petition for permission to file an amicus brief.  I'm going to

23   want your input on that as well.  I don't know who this fellow

24   is.  Some guy from California, apparently.

25        MR. NORRIS:  Your Honor, we're happy to file what

```
 1    will most likely be an opposition to that petition.

 2                THE COURT:  It sounds like he wants to fight more

 3    than support the Court's point of view here.

 4                MS. BLAIN:  Your Honor?

 5                THE COURT:  Yes.

 6                MS. O'GALLAGHER:  Sorry.  This is Emily Blain from

 7    the U.S. Attorney's Office.

 8                THE COURT:  Yes.

 9                MS. BLAIN:  I just wanted to add on that point about

10    the potential amicus participation.  I'm sure the Court knows

11    that the government typically is not opposed amicus

12    participation in any particular case, so we don't have a view

13    one way or the other about this potential --

14                THE COURT:  Well, you'll tell me that.  You'll write

15    me that and tell me that.

16                MS. BLAIN:  Okay.

17                THE COURT:  That's fine.  I have no problem with

18    that.

19                All right.  Well, I think the first order of

20    business, Mr. Norris, is to the extent that you agree, and you

21    if you don't agree, you'll tell me that, I think the standard

22    of review here for mandatory ultimate relief is different than

23    as set forth in your brief, so let's start there.  What would

24    you like to do, if anything, about that?

25                MR. NORRIS:  Your Honor, we're happy to brief that
```

1    issue and reply.  I think our view now is that at least it's

2    not, from our perspective, a mandatory injunction because we're

3    just asking the government to not consider a factor when making

4    admissions decisions.

5            THE COURT:  Right.  You're changing the status quo,

6    so it is a mandatory injunction.  I mean, I'm not -- you'll

7    tell me whatever you think is appropriate.  I don't know

8    whether doing it in reply is fair to the government.  If they

9    have no objection to that, I'm okay with it, but I would assume

10   that the government would want to be able to respond to that.

11           Ms. Blain?  Ms. O'Gallagher?

12           MS. O'GALLAGHER:  Yes, your Honor.  The government

13   would like to respond to that.  And the government agrees with

14   your Honor that this would be a mandatory injunction and,

15   therefore, is subjected to a heightened standard.

16           THE COURT:  I don't think there's any question,

17   Mr. Norris, about it.  If you don't believe that this is a

18   mandatory injunction, that's fine, but I'm going to give you

19   the opportunity -- I'm going to give you the opportunity to

20   revamp your memo of law concerning the -- just limited to the

21   burden of proof here.  I don't want you to rewrite your memo.

22   In fact, I'm not permitting you to rewrite your memo.  But what

23   I will do is I will allow you to revise your -- to the extent

24   that you deem it appropriate or necessary, your brief to set

25   forth the heightened standard of review required by me.

1           Likewise, when you go to the order to show cause that
2     you're going to prepare for me to sign, it shouldn't -- it
3     should not be -- it should not be in the form of your document
4     6.  It should be in the form of an order to show cause that
5     identifies the papers, in the ordinary course, what our orders
6     to show cause look like here in the Southern District.  So I'll
7     give you a week to do that.  You can revise your brief in a
8     week only to the extent of the burden of proof on a motion of
9     this type.  If you don't think it's necessary, then just simply
10    write me and tell me it's not necessary.

11          Also, you'll give me an order to show cause to sign
12    in the ordinary form of orders to show cause here in the
13    Southern District.

14          Also, within that week, you'll let me know about your
15    views on amicus.  The government will, likewise, let me know
16    that it has no view on amicus.

17          And I will -- and you'll also -- the government will
18    let me know on the issue of filing an answer or not.  I'm not
19    sure I fully understand why an answer in this kind of scenario
20    is not appropriate.  The more information I get about the
21    governmental interests and -- the compelling governmental
22    interests and the narrowing of the issues by an answer, I don't
23    see any downside, but I'm happy to be educated about this.

24          Likewise, I want to hear from you on the issue of
25    whether a settlement dialogue simultaneous with this briefing

schedule is something the government would be interested in.
It's a yes or a no.  I don't need any explanation.  If it is,
what would be your preferred route; private mediation, a
mediator here or the magistrate judge assigned to this case.
All right?

So, now, assuming I get that within a week, then what
I will do is I will give you until November 17th to oppose and
I'll give you until November 29th to reply.

I can't tell you whether I need a hearing or not
until I see those papers.  If I do need a hearing, I'm going to
schedule it.  If I don't need a hearing, but I want to hear
oral argument in connection with this, I will get you a date
momentarily.  We'll just put a pin in it.  And I'll do my best.
I understand all of your situations with respect to the 1-31
deadline, et cetera, and I'll do my best to get you a decision
in as quickly a fashion as I can, as quickly as I can.

What else can we do for each other today?

Obviously, this is an appellate issue that you need
to get to and I perfectly understand that.

Why -- I guess this decision came out in -- well, I
guess it came out in June.  Why did you wait so long for your
preliminary injunction?  You know, there's a -- I mean, you
really sort of -- I mean, you could have brought this months
ago.  Why did you wait so long, Mr. Norris?

MR. NORRIS:  Your Honor, we don't think we did.  We

1    don't have standing until members present themselves who are

2    injured, and so that process takes a little bit of time.  We

3    also were -- you know, between June and over the summer, the

4    government had a decision to make about whether it was going to

5    continue to use race in admissions after reading the Harvard

6    case and whether it still could.  And there is a correctional

7    hearing about this issue.  I'm forgetting the exact date.  I

8    believe it's referenced in our complaint.  But, there, they

9    said we're studying the issue, but, for now, they said for the

10   first time we're going to continue using race until DOD tells

11   us otherwise.  So that's when they seem to have made their

12   policy decision.  We have our members who presented

13   themselves --

14            THE COURT:  Well, they're studying it.  I mean,

15   they're studying it.  Okay.  So there isn't really -- I guess

16   you had to locate a member in order to bring the action.  That,

17   I can understand.  But what the government needs to do is --

18   the rule doesn't apply to them, so I guess you are interested

19   in making sure they stop using race or at least tell you what

20   they're going to do.  I understand that.  But that doesn't

21   really get in the way of bringing a lawsuit.  Having a member

22   who has been injured, that gets in the way of bringing a

23   lawsuit, but, I mean, it just creates, you know, a very tight

24   window of schedule for the trial judge who is privileged enough

25   to get the case.

```
 1              MR. NORRIS:  I totally understand, your Honor.  We
 2    filed the case before any relevant application deadline had
 3    even started, just sort of the nature of the admission cycle
 4    that it gets going once students are back in school.  But I'm
 5    happy to brief this issue, and I'm sure the government will
 6    raise it, but we don't think the admissions process had gotten
 7    under way.  And I think that the time delay here has been that
 8    we were -- maybe I regret this a little bit -- we were fairly
 9    generous in how much time we gave the government to respond and
10    that's going to be part of the time pressure.
11              THE COURT:  Well, you know, it goes to the very issue
12    of, you know, the sincerity of the request, frankly.  The
13    longer you wait, the less urgent it seems to become, right,
14    when you could have done this in August, July, you know.
15    Whatever.  I'm not ruling on it.  I have no opinion yet.  I'm
16    trying to get this in shape for me to understand what's going
17    on here.
18              Now, I guess one other thing, as long as we're
19    anticipating, I can give you a date to put a pin in for an
20    argument on December 21 at 11 a.m., but in the meantime, is the
21    plaintiff intending to take discovery?  Because there's no stay
22    of discovery here and I wonder, you know -- and again, this is
23    why, with all due respect to these deadlines, I wonder why --
24    how are you going to get to reply to what the government says
25    are compelling governmental interests and how are you going to
```

1    attack at them with credibility and believability when you're

2    staring at an affidavit signed by some person with personal

3    knowledge?  What are you going to tell me?  It's nonsense, your

4    Honor?  Don't believe it, your Honor?  How do you get to what

5    you need to do to meet your burden of proof?  Because this is

6    your application.  How is this going to work, actually,

7    Mr. Norris?

8            MR. NORRIS:  Well, your Honor, we understand that

9    looking for a preliminary injunction, which the Supreme Court

10   has said is necessarily preliminary and abbreviated and speedy

11   and all those things, that you're not going to get full

12   development of the factual issues, but that's why we know -- we

13   understand that, by taking this path, that we are going to be

14   limited mostly to pure questions of law.

15           THE COURT:  Yes.

16           MR. NORRIS:  And we think that those are the narrow

17   tailoring points in the opinion.  We think that the Supreme

18   Court has already opined on what counts as a compelling

19   governmental interest.  We're using race in these.  Whatever

20   the government says is not going to be one of those things.

21           There's a lot of legal reasons why the government

22   ought to lose this case preliminarily that won't have anything

23   to do with credibility or sort of the extent of the evidence

24   that they've mustered.

25           THE COURT:  So you're hanging your hat on narrowly

1    tailored and I guess -- you know, I did read that the

2    compelling interests permit race where race classification is

3    used to further compel governmental interests is extremely

4    limited, according to Chief Justice Roberts, in the history of

5    the law.  I just -- okay.

6          I guess I'll try to get my head around these are just

7    legal issues and not factual issues, but if they -- so I guess

8    you would -- the way you would approach this is to say to me,

9    well, let's just assume they have compelling governmental

10   interests, your Honor.  The way they're narrowly -- or the way

11   they say they're narrowly tailoring it just doesn't, as a

12   matter of law, achieve that interest.  Is that the essence?

13         MR. NORRIS:  That will the one attack, your Honor.

14   Another attack will likely be that the things that count as

15   compelling for using race, which is the most (INDISCERNIBLE)

16   classification are limited.  There will be additional things to

17   talk about as a matter of law.  And, of course, the

18   government's going to have to come up with distinct interests

19   is what the Supreme Court said in the footnote, which we don't

20   think it's ever done.  And in fact, the government's main

21   argument in the Harvard case was you need to let colleges and

22   universities use race because that's where we get our ROTC

23   people and the ROTC people become military officers and it's

24   key to military readiness.  So the Supreme Court has already

25   rejected the government's national security rationale at least

1    in the ROTC context.

2              So not to preview too many of our arguments.  I think

3    a lot of this is already in the briefs and will be

4    (INDISCERNIBLE) by the parties, but that's kind of where our

5    head's at.

6              THE COURT:  Yes.  And I guess, you know -- so I'm a

7    burden of proof person, just so you know.  I mean, that's sort

8    of my point of view of the world.  And so I stick very closely

9    to the burden of proof.  And I guess one of the things I was

10   just sort of thinking about, and I don't know whether it's good

11   or bad thinking, frankly, but I was trying to think through the

12   difference between the compelling governmental interests of the

13   West Point Academy, United States Military Academy at West

14   Point, and the compelling governmental interest in the service

15   branch, the service branch, the Army or whatever it is.  And I

16   wonder.  Are they different?  Are they identical or are they

17   different?  One being I guess an educational institution in

18   part and one being a military branch of the government.

19             MS. BLAIN:  Your Honor, I can take that.

20             THE COURT:  Yes.

21             MS. BLAIN:  Sorry.  It's hard over the phone.  I

22   don't mean to interrupt the Court.

23             THE COURT:  No, you're fine, Ms. Blain.

24             MS. BLAIN:  Okay.  Good.

25             So just as sort of a preliminary matter, no court,

1    just to be clear, has ever evaluated whether or not the

2    Military -- whether or not the Military's compelling interest

3    in having a diverse composition satisfies a strict scrutiny.

4    The cases before the Supreme Court has always been in the

5    purely educational context, not in the context that education

6    for Army officers, Naval officers, Air Force officers, Marine

7    Corps officers.  But this particular question was not addressed

8    by any court, much less the Supreme Court, and that's why this

9    case is so important and why the government is prepared to

10    provide the Court with many declarations and information and

11    facts to explain why these interests are in fact distinct from

12    a private education and a private college.

13            Secondly, to the extent the Court is asking whether

14    or not there are different compelling interests for an officer

15    corps versus the enlisted corps, that is something that the

16    government is also evaluating and may be prepared to address to

17    the extent the Court is interested in that, but I will just

18    note that this complaint is focused on West Point admissions

19    only.  Right?  And the West Point admissions process is to let

20    in individuals who will then become second lieutenant officers

21    in the Army who are going to leave the enlisted corps.  So

22    really what we're looking at is what is the obvious compelling

23    interests in having a diverse officer corps.  That is the

24    question before the Court and that is the question that the

25    government is prepared to brief and give you credible

```
 1  admissible --

 2            THE COURT:  In effect, your answer to me is, Judge,

 3  there is no difference in the compelling interests,

 4  governmental interests, of the Army and the compelling

 5  governmental interests of the Academy.  Is that right?

 6            MS. BLAIN:  Your Honor, I don't know that that's

 7  something that the Armed Services is yet prepared to opine on.

 8            THE COURT:  Okay, okay.  All right.

 9            MS. BLAIN:  I think we will be prepared, though, by

10  the 17th and we will give you a full record.

11            THE COURT:  All right.

12            And I guess the other point is is it true that only

13  about 17 percent of the commissioned officers come from West

14  Point?  Do you know that off the top of your head?  It's just a

15  matter of curiosity.

16            MS. BLAIN:  I don't think that's the precise

17  percentage, but it is --

18            THE COURT:  In the neighborhood.

19            MS. BLAIN:  -- potentially in the ballpark, yes.

20            THE COURT:  Yes.

21            Well, I'm glad all of you showed up on my doorstep.

22  I'm delighted and privileged to be here and I'm delighted and

23  privileged to have this case.  And you'll get my level best.

24  One of you, of course, will disagree with that and that's the

25  system we have.
```

1          I am not going to give up yet on the notion that this

2     can be resolved through settlement dialogue once the defendants

3     know what position they're in and I am not in agreement that

4     this can be resolved as a matter of law.  I am not in agreement

5     thus far that this can be resolved strictly as a matter of law.

6     And I hope you'll recognize that I expect fully that you'll

7     talk plainly to me.  Tell me what you need me to hear.  Stick

8     to my page limitations, please.  And make sure in whatever

9     sense you -- whatever manner you're going to present this to

10    me, that it's useable, readable and, you know, in a way that is

11    not -- I realize you're all anxious to get your appellate

12    briefs and record on appeal ready.  These bound volumes that

13    are courtesy copies create lots of issues when you're sitting

14    here trying to sift through them.  So, I mean, just try to be

15    mindful of the fact that when I'm looking at courtesy copies,

16    actually I have to be able to open them, get to the page I want

17    to read.  Just be mindful of the presentation and I will do my

18    best.

19          Now, just so you know, I'm starting a multi-defendant

20    trial on Monday, the 30th and it's slotted to go through the

21    month of November.  I will endeavor to get to these papers and

22    start looking at them as soon as they arrive.

23          I've taken a fair look at what you've given me

24    already, Mr. Norris, and, you know, I am still of you the view

25    that -- and I would entertain the possibility, if you all

1    agreed, that the better way to do this is to have a trial on

2    the merits and consolidate the preliminary injunction hearing

3    with a trial on the merits.  That may get you past your

4    deadline, but it might be a more fulsome record and a cleaner

5    way to get this issue to the next court if you are so inclined.

6    If you don't want to do that because you just think these are

7    clear, simple, narrow issues of law that I can adjudicate, I

8    have no disrespect for it, but I'm not there yet.  I am not

9    there yet for sure.

10            All right.  Is there anything else that --

11            MS. O'GALLAGHER:  Excuse me, your Honor.  Alyssa

12    O'Gallagher for the government.  If I may just briefly, I just

13    want to note that, though the government defendants have agreed

14    with plaintiffs to a PI briefing schedule and we're prepared to

15    present our opposition on the date agreed upon, that the

16    government is really in agreement with your Honor that, for

17    many of the reasons that you've already touched upon, that this

18    case just really isn't appropriate for a preliminary injunction

19    and it would make more sense to proceed in the ordinary course,

20    potentially have summary judgment briefing and an ultimate

21    trial if necessary.

22            I think, as your Honor has recognized, plaintiffs, in

23    ways, have sort of created the urgency here by the time of

24    their filing.  They could have filed immediately after the

25    Supreme Court's decision in June.  They even could have filed

1    prior to that time.  They didn't need that decision in order to
2    file this lawsuit.
3              And though plaintiff's counsel mentioned that, in
4    ways, they were waiting for the current application cycle, I
5    would just like to note factually that the candidate
6    questionnaire, which is really the first component of an
7    application to the U.S. Military Academy, opens on February 1st
8    of an applicant's junior year of high school.  And so to the
9    extent I believe it's Member A who is a senior in high school
10   at this point in time, you know, as of February of last year,
11   he could have begun filling out the candidate questionnaire and
12   possibly could have begun thinking about joining this suit and
13   having a suit filed at that point in time, before we are -- at
14   this point, we're really mid-admissions cycle, and from the
15   perspective of the balance of the equities and the public
16   interest, were we to come to a point where West Point were to
17   be required to change its admissions practices midstream, in
18   the middle of an admissions cycle, that would be
19   extraordinarily burdensome and, quite frankly, unfair to
20   applicants who, because of when they applied, could have been
21   treated differently at different points in the cycle based on
22   the Court's potential future rulings.
23             THE COURT:  You are all just full of excellent
24   thinking and I admire it all.  I just -- you know, the premise
25   here, there's two things that stand out for me.  And frankly,

1    I'm truly looking forward to working with you.  The caliber
2    here is just outstanding.  And it's not to suggest I don't have
3    outstanding lawyers every day of my life, but I just think that
4    this is a noteworthy group.
5           The two things that stand out for me, and I'll
6    reiterate them, are, one, and I don't think either of you
7    representing the defendants know yet exactly what the
8    government's position here is and if it's malleable or in some
9    way there's an opportunity to resolve this so that it's orderly
10    and appropriate and in accordance with all of the things that
11    your clients need to follow through on, now is the time to do
12    it.  Now is the time to do it.  And so I do want you to get
13    back to me as quickly as you can.
14           And the other thing that just -- it just -- listen,
15    I've been around trial work.  It won't take long to figure that
16    out.  My whole career, before I was so lucky and privileged as
17    to get here, I sat on the other side of calls -- different
18    topics than this, but like this, for 40 years.  So that's all I
19    did for a living is argue -- try cases and argue appeals.
20    Certainly nothing of this nature, but I've been in and around
21    the process my entire life, and so my entire professional life.
22           And so when I'm confronted with a scenario like this,
23    where the premise really is predicated on the defendants'
24    knowledge, the defendants' position, it's very difficult for me
25    to understand that this should be done on a preliminary

1    injunction motion basis.

2          You don't even know yet what you're arguing about

3    until the opposition comes and then you're going to file a

4    reply.  And if you're right, Mr. Norris, that this can be

5    funneled to the well-stated legal arguments that you believe

6    carry the day, you know, okay.  I just, as an initial matter,

7    without having all the papers before me, find that a little

8    difficult.

9          And, of course, I guess the other point here is,

10   which may be an additional point, I guess if I grant the

11   preliminary injunction, right, the defendants will appeal.  If

12   I deny the preliminary injunction, I believe the plaintiffs

13   would have a right to immediately take an appeal.

14         Am I right about that, Mr. Norris?

15         MR. NORRIS:  Yes, your Honor.

16         THE COURT:  Yes.  So it may be I'm just a place card

17   holder for the next round of what's coming, so I guess, in some

18   respects, that also helpful to all of you.

19         All right.  Look, I'll do my best with this.  Follow

20   my instructions, please, and just get me what I need.  Get the

21   affidavit of service, the order to show cause cleaned up.  If

22   you want to clean up your brief, I'm giving you the chance to

23   do it.  If you don't, don't.  That's okay with me.

24         So talk to your clients, please, Ms. Blain and Ms.

25   O'Gallagher, about the settlement or not and educate me on this

1  answer or not.  I'm very familiar with preliminary injunctions.

2  I know it's preliminary.  I know we can do it without the full

3  record.  I get it.  You don't have to tell me that.  Just

4  explain to me why I should or should not grant one here.

5           All right.  Very nice to talk to you on the phone.

6           Is there anything else on anybody's mind that I have

7  not addressed that you would like me to?

8           MR. NORRIS:  Nothing for plaintiff, your Honor.

9  Thank you very much.

10          MS. O'GALLAGHER:  Nothing for the government, your

11 Honor.

12          THE COURT:  All right.  Take good care.  I look

13 forward to working with you all.  So long.

14          MS. BLAIN:  Thank you, your Honor.

15          MS. O'GALLAGHER:  Thank you.

16

17                              ----

18

19

20

21

22

23

24

25